No. 19,089.

J. C. BORTON, *Appellant*, v. GEORGE MANGUS, *Appellee.*

SYLLABUS BY THE COURT.

HIGHWAYS—*Obstruction—Injunction by Private Citizen—Must Show Special Damage.* One who has occasion to pass over a highway more frequently than others does not sustain special damage peculiar to himself beyond that of the general public which would entitle him to relief by injunction.

Appeal from Sherman district court; CHARLES W. SMITH, judge. Opinion filed January 9, 1915. Affirmed.

*John Hartzler*, of Goodland, for the appellant.

*E. F. Murphy*, of Goodland, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Plaintiff brought suit to enjoin the obstruction of a public highway, and appeals from a judgment sustaining a demurrer to his petition.

The plaintiff is a stockgrower and farmer, and owns and resides on a farm located in the state of Colorado, adjoining the line between that state and Kansas. The defendant is the owner of land lying in Kansas immediately east of the lands of the plaintiff. It appears from the petition that there is a north and south road in Colorado adjoining plaintiff's land on the east, which road lies wholly within the state of Colorado, and that there is also a road in Colorado running east and west through the lands of the plaintiff, and which is two hundred yards south of his residence, and that this east-and-west road intersects the north-and-south road and connects with a road in Kansas, which the plaintiff claims the defendant has obstructed.

The plaintiff alleges that the obstructed road became a highway by special act of the legislature of Kansas (Laws 1887, ch. 215) declaring all section lines in

Sherman and certain other counties in Kansas to be public highways, and to be of the width of sixty feet. The section line between sections 19 and 30 in township 8 of range 42 in Sherman county runs through the tract of land owned by the defendant, and the plaintiff alleges that by virtue of this act of the legislature and the use by the public for a number of years it became a public highway. The town of Kanorado is in Kansas, and is the post office and market town of the plaintiff. When the road in question was opened and used by the public the plaintiff could travel from his farm in Colorado to the town of Kanorado, and it furnished the nearest highway to the town from his land and residence. He alleges that the defendant has erected and maintains buildings and fences thereon, and that the obstruction compels him, in order to reach the town of Kanorado, to drive about one-half mile south on the north-and-south road in Colorado, then by an angling road northeast to town; and that on every trip he makes to the town, either for business or pleasure, he must travel about two miles more by reason of such obstruction.

It will be observed that there is no allegation in the petition that the plaintiff is denied ingress to or egress from his farm by reason of the obstruction, and indeed the facts show that his lands do not abut upon the road which defendant has obstructed. The obstructed road lies wholly within the state of Kansas; his farm lies in Colorado. The allegation is that the obstructed road intersects the north-and-south highway along the state line, and is a continuation of an east-and-west road which runs two hundred yards south of plaintiff's residence. It, therefore, affirmatively appears that he has ample means to get to and from his farm by the highways in Colorado.

The rule is firmly established in this state, and is of general application everywhere, that to entitle a private individual to invoke the interposition of a court of

equity to restrain a public nuisance arising from an obstruction of a public highway, he must show special damages apprehended or sustained peculiar to himself and different in character from those suffered by the public at large. (*Venard v. Cross,* 8 Kan. 248; *Trosper v. Comm'rs of Saline Co.,* 27 Kan. 391; *Ruthstrom v. Peterson,* 72 Kan. 679, 83 Pac. 825.) In the latter case the court interpreted the petition to mean that a public road forty feet wide was established on the west side of a tract of land and along the east side of the land belonging to the plaintiff. The obstruction interfered with the east twenty feet of the road, but left a strip twenty feet wide on the west side of the road adjoining the land belonging to the plaintiff, and because the court could not judicially declare that a twenty-foot strip of land was too narrow for plaintiff's use as a road to and alongside of his land, it was held that he failed to show special damages different in character from that sustained by the public at large. In the opinion it was said:

"The only special right which an abutting owner has in a public highway is that of access to his premises. When he has passed from his land into the road his right to travel there is not different from the right enjoyed by other members of the community." (p. 680.)

In *Sargent v. George,* 56 Vt. 627, the court refused relief by injunction where the damage complained of was the obstruction of a passageway leading from a house to the street for the reason that but a few rods distant there existed another way equally available and in daily use. One who has occasion to pass over a highway more frequently than others does not sustain special damage peculiar to himself beyond that of the general public which would entitle him to relief by injunction. In *Wellborn v. Davies,* 40 Ark. 83, it was held that the inconvenience resulting to a physician in visiting his patients caused by the obstruction of a public road by fences is not a special injury different from

that which every citizen suffers whose business or pleasure may cause him to travel the road. It is of the same character, only perhaps different in degree, from that which others suffer which have other business and live far away.

In *Crook v. Pitcher,* 61 Md. 510, it was held that the fact that one who had very frequent occasion to use a highway is obliged to travel a longer road because of an obstruction does not show a special damage different from that which the public sustains. To the same effect is *T. & K. W. Ry. Co. v. Thompson,* 34 Fla. 346, 16 South. 282, 26 L. R. A. 410; *Sohn v. Cambern,* 106 Ind. 302, 6 N. E. 813. There is some conflict of authority upon this question in the different states. (See Notes, 7 L. R. A., n. s., 73; 28 L. R. A., n. s., 1053.)

The allegations in the petition are to the effect that the plaintiff can and does go from his land to a public road and reaches the market town in Kansas by traveling one-half mile south, and then by a road northeast to Kanorado. As said in *Ruthstrom v. Peterson,* supra, "When he has passed from his land into the road his right to travel there is not different from the right enjoyed by other members of the community." (p. 680.) The same principle would seem to apply here. There is a road which reaches his land and by which he can pass to and from town. The inconvenience resulting to him from the obstruction of the road is of the same character that every citizen suffers who from business or pleasure has occasion to travel the road. It may differ in degree but not in kind from that which others suffer who have occasion to use the road. He is not denied access to his land by the alleged obstruction, but is merely required, like others, to travel a longer distance between his land and the town.

If the state line between Kansas and Colorado were located a mile farther west than it is, and the plaintiff's land lay in this state, and the road when open, as the plaintiff contends it should be, extended from the town

BAILEY v. KELLY (1915) 93 Kans. 723,
                                145 Pac. 556,
                                L.R.A. 1916B, 220.

HELD that a landlord is not liable for the death of a tenant's servant caused by stepping upon a loose cistern cover. The cistern cover was loose at the time the lease was made.

"***He cannot himself enter upon the tenant's possession, even to repair, unless the right be reserved or permission obtained, much less grant licenses to others. ***

"The principle upon which the lessor of premises is held liable to third persons for nuisances existing at the time the tenancy was created is this: The landlord having possession and control of his land, or the right to possess and control it, owes the public, who are suffering or must suffer from the nuisance, the duty to abate it and must respond in damages for a breach of the duty. The duty and the liability are not satisfied by the simple act of leasing the premises, and continue until the nuisance is abated.

"Much is said in the decisions concerning a presumption that the landlord contemplates a continuance of the nuisance while the tenant is in possession. The presumption is gratuitous and fictional as often as otherwise.

Over

C.F.O.S.

The rent reserved is frequently reduced because of the condition of the premises, and with the expectation that the tenant will put them in order. Frequently the landlord takes from the tenant a covenant that the tenant will repair. The majority of courts hold that the liability of the landlord is not ended because of a lease containing such a covenant, and it seems sufficient to say that the landlord's obligation having once arisen he can not shift or evade or discharge it by leasing to another, but that the obligation continues until the public peril is actually removed."

to the road running north and south along the plaintiff's land, he could not enjoin the obstruction complained of, because he would still have free access to his land and would be unable to show that he sustained a damage different in kind and character from that suffered by the public at large. It will therefore be unnecessary to discuss the interesting question whether the action is transitory or local, or whether the courts of this state would entertain jurisdiction in a suit by a nonresident to enjoin the obstruction of a highway in Kansas upon the theory that the obstruction closed a road and resulted in denying him access to or egress from lands in Colorado.

It is said in the abstract that the court sustained the demurrer on the ground that the plaintiff lacked legal capacity to sue, which was one of the grounds of the demurrer, as was also the ground that the petition failed to state a cause of action. The plaintiff has legal capacity to sue, but being in court is unable to state facts which constitute a cause of action entitling him to relief.

The judgment therefore will be affirmed.