No. 39,202

GEORGIE STEIFER and PAUL STEIFER, *Appellees* and *Cross-Appellants*, v. THE CITY OF KANSAS CITY, KANSAS, A Municipal Corporation, *Appellant*.

(267 P. 2d 474)

Opinion filed March 6, 1954.

*William H. Towers,* deputy city attorney of Kansas City, argued the cause, and *C. W. Brenneisen, Jr.,* city attorney of Kansas City, and *James J. Lysaught,* and *John J. Ziegelmeyer,* deputy city attorneys of Kansas City, were with him on the briefs for the appellant.

*Leonard O. Thomas,* and *J. Donald Lysaught,* both of Kansas City, argued the cause, and *Arthur J. Stanley, Arthur J. Stanley, Jr., J. E. Schroeder,* and

*Lee E. Weeks*, all of Kansas City, were with them on the briefs for the appellees and cross-appellants.

The opinion of the court was delivered by

WERTZ, J.: This was an action brought by plaintiffs Georgie Steifer and Paul Steifer (appellees and cross-appellants) to enjoin the defendant The City of Kansas City (appellant) from operating and maintaining a public dump which was alleged to be a public nuisance, and to recover damages arising from the city's operating and maintaining such public dump. Appellees and cross-appellants will be hereinafter referred to as plaintiffs, and appellant The City of Kansas City as defendant, or city.

On October 5, 1950, plaintiffs filed their original petition for injunctive relief and damages for alleged injuries to themselves and their property. Subsequently, a second amended petition was filed which will be hereinafter referred to as petition.

Omitting the formal parts, plaintiffs alleged they were the owners of certain described real estate; that the defendant city on April 26, 1949, entered into an agreement whereby Georgia B. and Wayne P. Jenkins granted it an easement for the use of certain land (described) owned by them for a public dump. The land was contiguous to the plaintiffs' property and has been and is being used by defendant as a public dump. The defendant city began operating the dump some time after April 26, 1949, and have operated it so negligently and carelessly that it has, as more refuse has been dumped, caused noxious and offensive odors to come therefrom, tainting and corrupting the air in and about plaintiffs' premises so as to render the dwelling house, which is about 700 feet from the dump, and premises of plaintiffs unhealthy and unfit for occupation from and after May 15, 1950. Fires have occurred frequently, and smoke and burning trash have been blown and deposited about the dwelling house and premises of plaintiffs, thereby rendering their premises unfit for occupation, and endangering their lives, safety and health. The dump had become more infested with insects and rodents as the piles of refuse increased, endangering the health of plaintiffs and rendering their dwelling and premises unfit for occupancy. The presence of rodents first became noticeable about the middle of May, 1950, and no appreciable number were theretofore in the vicinity. Two overflowing springs on the property have been destroyed. The dump constitutes a nuisance to the plaintiffs, their comfort and health have been greatly impaired, and they have lived

in constant fear of contamination. The value of their premises has been impaired and their property taken for public use without compensation. Defendant has caused and permitted trash, debris and waste material of all types to be deposited in the watercourses adjoining the dump, thereby obstructing the flow of surface water drainage in the watercourses. About May 15, 1950, the obstruction first caused surface water to accumulate and inundate a portion of the land of plaintiffs, and will continue to be inundated by reason of the obstruction of the surface water drainage. On August 12, 1950, and within three months after the injuries complained of, plaintiffs filed with the city clerk of Kansas City a notice of claim for damages, setting forth the time, place and circumstances relating to the injuries complained of, as herein related, and a copy of such notice was attached and made a part of the petition; that by reason of the creation and maintenance of the nuisance, in taking plaintiffs' land and the inundation of portions thereof, plaintiffs have suffered damages in the sum of $10,000, and they pray judgment that the nuisance be removed and abated, and for recovery of the damages alleged.

The defendant, in addition to a general denial of plaintiffs' allegations, alleged that it was required by law ( G. S. 1949, ch. 12, art. 21) to maintain a public dump for the benefit and convenience of its citizens; that no financial gain was realized from the operation of the dump, and the same was kept in as good a condition as possible; that the city was engaged in and exercising a governmental function, and that the dump was not a nuisance nor was the city liable in damage to plaintiffs for any. injuries sustained. To the city's answer, plaintiffs filed a general denial.

On the issues thus framed, the cause proceeded to trial. Thereafter the jury returned its general verdict in favor of the plaintiffs in the sum of $3,000, and returned the following answers to special questions submitted by the court:

"1. Do you find that within three months prior to August 12, 1950, that the City of Kansas City, Kansas, operated and maintained the dump in question in such a manner as to constitute a nuisance to the plaintiffs? . . .

"Answer: Yes.

"2. If your answer to the above question is yes, state in detail the facts causing the nuisance.

"Answer: Noxious, offensive odors and smoke.

"3. If you find for the plaintiffs and find they are entitled to recover damages state the amounts you are allowing plaintiff for:

"Damages to real estate; Answer: $ Nominal Damages for other injuries complained of:

"Answer: $3,000.00."

The trial court adopted the findings of the jury and found that the defendant, at the times alleged in the petition, so maintained and operated the city dump described therein as to constitute a nuisance to the plaintiffs, and that defendant continued to so operate the dump as such nuisance to and including the time when the cause was called for trial, and further found that the nuisance consisted of operating and maintaining the dump in such a manner that noxious and offensive odors and smoke were permitted to be in, on and around the plaintiffs' property, and by obstructing the flow of natural watercourses which flowed over and upon the plaintiffs' property, with the result that a pond of stagnant water was caused to be formed on it, and that the nuisance should be abated, and entered judgment abating the nuisance, $1.00 nominal damages to the real estate owned by plaintiffs, and the sum of $3,000 in damages for other injuries complained of. Within the time provided by law, plaintiffs filed a motion for a new trial on the question of damages only, and defendant filed a general motion for a new trial. From a judgment overruling defendant's motion, it appeals, and from a judgment overruling plaintiffs' motion, they cross-appeal.

Defendant first contends that the court erred in not sustaining its demurrer to the plaintiffs' evidence for the reason that the maintenance and operation of the public dump are in the exercise of its governmental function, and therefore it is not liable to the plaintiff for damages. The general rule in this state is that a city is not liable for negligent acts of its officers or employees when acting in the performance of governmental functions, absent a statute expressly imposing liability. However, exceptions to the general rule have been recognized where the city's conduct results in creating or maintaining a nuisance. This exception to the general rule was thoroughly discussed and the authorities analyzed in the somewhat similar case of *Jeakins v. City of El Dorado*, 143 Kan. 206, 53 P. 2d 798, wherein Mr. Justice Thiele, speaking for this court said, at page 209:

"... a majority of the courts passing upon the question have held the immunity of a municipality from liability for acts done in performance of governmental functions does not extend to cases of injury resulting from a nuisance created or maintained by the municipality, and that the municipality is liable although the nuisance was created or maintained in the performance of public duties or governmental functions; ..."

The rule is reiterated in *Klassen v. Creamery Co.*, 160 Kan. 697, 165 P. 2d 601; *Buckmaster v. Bourbon County Fair Ass'n*, 174 Kan. 515, 521, 256 P. 2d 878.

Defendant next contends that the evidence failed to show that a nuisance existed. Nuisance means annoyance, and any use of property by one which gives offense to or endangers life or health, violates the laws of decency, unreasonably pollutes the air with foul, noxious, offensive odors or smoke, or obstructs the reasonable and comfortable use and enjoyment of the property of another, may be said to be a nuisance. What may or may not constitute a nuisance in a particular case depends upon many things, such as the type of neighborhood, the nature of the thing or wrong complained of, its proximity to those alleging injury or damage, its frequency or continuity, and the nature and extent of the injury, damage or annoyance resulting. Each case must, of necessity, depend upon particular facts and circumstances. (*Hofstetter v. Myers, Inc.,* 170 Kan. 564, 568, 228 P. 2d 522, 24 A. L. R. 2d 188; *Klassen v. Creamery Co.,* 160 Kan. 697, 165 P. 2d 601; *Neiman v. Common School District,* 171 Kan. 237, 232 P. 2d 422; *McMullen v. Jennings,* 141 Kan. 420, 41 P. 2d 753; *Winbigler v. Clift,* 102 Kan. 858, 172 Pac. 537; *Jeakins v. City of El Dorado,* supra.)

In the instant case, the evidence regarding the operation and maintenance of the dump, and the extent of damages suffered by plaintiffs, disclosed that during the three months preceding the filing of their claim, the odor daily permeated and surrounded their premises; that it was a foul stench; that plaintiffs had trouble eating and lost their appetites. They had to be away from their home at times on account of the smell; that it permeated their clothing and could be noticed by their business associates at their place of business; they were held up to ridicule and pity among their friends and associates. They could not sleep with the windows open and had to purchase electric fans, and were required to use deodorizing candles in their home. Articles taken from the home carried the smell. The property had been partially inundated and the pond which the city created, smelled. Plaintiffs' property was not attractive or useable for picnics, etc. These facts and many others not here narrated, sustain each of the allegations contained in plaintiffs' petition, and that testimony, consisting of some 100 pages, was sufficient to make out a prima facie case of nuisance and resulting damage, and the court did not err in overruling defendant's demurrer to plaintiffs' evidence.

Defendant next contends that the court erred in permitting plaintiffs to introduce evidence as to smell, smoke and other conditions

of the dump, after the plaintiffs' notice of claim for damages was filed. G. S. 1949, 12-105, provides no action shall be maintained against any city on account of injury to person or property, unless the person shall within three months thereafter and prior to bringing suit, file with the city clerk a written statement giving the time and place of the happening of the injury received, and the circumstances relating thereto. An examination of plaintiffs' claim of demand discloses it is limited to damages sustained to the date of filing with the city, and under such circumstances it cannot be said plaintiffs would be entitled to prove damage to their person or property after that date. (*Jeakins v. City of El Dorado*, supra.) However, this was a trial where one of the principal reliefs sought was abatement of a nuisance, and the evidence complained of was admissible on this phase of the case. The court necessarily was interested in the history and record of operation so that it could determine the nature of the final order to be entered, and could easily separate the facts supporting the nuisance issue and the facts supporting the damage issue. The court in its instructions to the jury made it clear that plaintiffs' right to recover damages was limited to a period of three months preceding the filing of their claim with the city, and defendant's contention of error in this regard is without merit.

This brings us to plaintiffs' cross-appeal. During the trial, plaintiffs offered testimony concerning the highest and best use of their land for suburban development purposes immediately prior to the date the dump became a nuisance. The court sustained defendant's objection to this testimony. Plaintiffs contend that such ruling constitutes reversible error. Although the land was not actually being used in such a manner prior or subsequent to the maintenance of the city dump adjoining plaintiffs' land, there was an existing market value for the land for suburban development, and the land was suitable for such development because of its terrain and proximity to the city, the presence of utilities and the need for housing in Wyandotte county, and the defendant's dump materially affected that market value. This was true whether the court ordered the nuisance abated or not. The trial court excluded this evidence and instructed the jury to allow no more than nominal damages to plaintiffs' real estate. The testimony was reoffered on the argument on plaintiffs' motion for new trial and was refused. It is our opinion that the trial court erred in refusing this testimony.

The general rule for determining what is just, adequate and fair

compensation for land taken or damaged is that the owner is entitled to show the best and most advantageous use to which the property may be put. (*McIntyre v. Board of County Comm'rs of Doniphan County*, 168 Kan. 115, 118, 211 P. 2d 59.) Since plaintiffs were not permitted to show the actual existing market value and their loss by reason of the defendant's nuisance, they were denied the right to recover the damage to their real estate sustained by reason of the nuisance. We are of the opinion that the court in excluding this evidence was in error and that the plaintiffs were prejudiced thereby, and that a new trial necessarily results.

Inasmuch as the nuisance has been abated, and we are informed by the record that the city is no longer using the dump, that issue becomes immaterial on a retrial of this case.

In view of the record and what has been said, the case is reversed and remanded to the trial court with instructions to grant a new trial on the question whether the plaintiffs sustained any damage, by reason of the nuisance and, if so, in what amount.

It is so ordered.