No. 42,678

HERMAN SPACEK, *Appellant,* v. CITY OF TOPEKA, A Municipal Corporation, *Appellee.*

(371 P. 2d 165)

Opinion filed May 5, 1962.

*Charles S. Scott,* of Topeka, argued the cause, and *Elisha Scott, John J. Scott* and *Samuel C. Jackson,* of Topeka, were with him on the briefs for appellant.

*Bruce Works,* of Topeka, argued the cause, and *John W. Lewis, Donald S. Simons* and *Wm. B. McCormick,* of Topeka, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action for the alleged appropriation of the plaintiff's property by the city of Topeka and the Board of County Commissioners of Shawnee County without compensation or consent, and for damages caused by the continuing use of the plaintiff's land. The plaintiff's petition, filed February 16, 1960, alleged that by virtue of such appropriation and continued use, a

nuisance was created, and he prayed for damages in the amount of $10,600. The defendants demurred to the petition and the city's demurrer was overruled, but the Board of County Commissioners' demurrer was sustained for the reason that the statute of limitations precluded suit against it. At the close of the plaintiff's case, the city's demurrer to the evidence was sustained. The plaintiff has appealed from that ruling.

There was evidence that the plaintiff purchased the property on September 10, 1957, and at that time the disputed ditch was on his property. The ditch runs in a northeasterly direction from the southwest corner of the plaintiff's property. When the plaintiff took possession of the property in September, 1957, he measured the ditch and found it to be three feet from the southeast corner of his concrete block garage.

The plaintiff testified that even before he took possession of the premises he had spoken with the city and the county engineers concerning their use of the property. Inasmuch as the area had been incorporated into the city in January of 1957, the county engineer made no effort to advise the plaintiff, but the plaintiff testified that the city engineer told him something should and would be done in a reasonable length of time. The evidence showed that the ditch in question had been in existence for many years and that it was natural drainage inasmuch as the surrounding land on all but the east side was higher ground and the ditch sloped to the east.

The plaintiff testified that the flow of water during heavy rains was high and forceful and that debris was left when the water subsided; that since he took possession of the property, the ditch had widened; that he measured the distance from the garage to the bank and found it to be only two feet in February of 1959 whereas it was originally three feet; that his garage foundation was cracking due to erosion; that in April, 1958, he wrote the city commissioner and explained the deteriorating bank and the increasing damage to his garage, commenting also on the fact that the garage was then only two feet from the ditch and was cracking due to loss of footage. He testified to the disturbing and nauseous odors and the discomfort allegedly caused by the deposits left when the flow of water subsided in the ditch, and to the diminution of the value of his property and of the amount of repairs that he had made to enhance its value.

A licensed engineer testified on behalf of the plaintiff that he

inspected the premises and, based upon such inspection, he prepared drawings of the area, which were put into evidence. The drawings showed how the paved streets and drainage system were constructed and how they directed the flow of water through the drainage ditch. He testified that the actual drainage area had been reduced as a result of the paving and that, in his opinion, less water flowed through the ditch after the paving than before, but that it flowed with greater force which could increase the erosion and have the effect of washing more materials onto the plaintiff's property to remain there when the flow of water diminished. He testified the ditch was a natural waterway that had been there for many years.

On March 2, 1959, the plaintiff filed a claim with the city clerk setting out that his property had been taken without compensation; that no improvements had been made to alleviate his damage, and that his property had been diminished in value by the nuisance created.

There was no evidence to establish when any specific injury was done to the plaintiff's property and he, therefore, predicated his right of recovery upon the theory of continuing nuisance.

It would appear to be the contention of the plaintiff that the district court erroneously construed the nature of the action as being one based on permanent nuisance and the evidence as establishing damages, if any, of a permanent nature.

Had the plaintiff alleged and the evidence shown that a permanent structure was the facility which caused permanent injury, the statute of limitations clearly barred the plaintiff's right of recovery. (*Jeakins v. City of El Dorado*, 143 Kan. 206, 53 P. 2d 798; *McDaniel v. City of Cherryvale*, 91 Kan. 40, 136 Pac. 899.) The paving project was the facility which might give rise to an action inasmuch as the ditch was in existence for many years and was the natural drainage for the entire area long before the street was paved. The paving project in the summer of 1956, the paved streets, and the network for drainage caused the water to ultimately flow into the natural drainage ditch as before, but apparently with more force. The actual drainage area was reduced as a result of the paving, but the velocity with which the water flowed into the ditch increased. However, if, as the plaintiff contends, he based his cause of action and notice of claim upon, and his evidence established, an abatable but continuing nuisance predicated on the city's failure to abate the

condition, his cause of action is repeatedly renewed with each instance of injury. (*Henderson v. Talbott*, 175 Kan. 615, 266 P. 2d 273; *Watkins v. City of El Dorado*, 183 Kan. 363, 327 P. 2d 877; *Steifer v. City of Kansas City*, 175 Kan. 794, 267 P. 2d 474.) But the duty to allege and prove that an injury and damage has accrued, within the meaning of G. S. 1961 Supp., 12-105, is upon the plaintiff.

Nowhere in the petition, notice of claim, or in his evidence did the plaintiff assert or prove that the alleged injury occurred within three months immediately preceding the date the notice of claim was filed on March 2, 1959. (*Watkins v. City of El Dorado*, supra; *Jeakins v. City of El Dorado*, supra.) By his own concession, the plaintiff asserts that his most significant evidence is the eroding bank which has resulted in visible damage to his garage. However, in spite of the plaintiff's assertion that the garage was damaged in February, 1959, there is clear evidence by his own admission that the garage wall was cracked and the bank diminished a foot as early as April 5, 1958, when he wrote the city commission. The plaintiff's evidence failed to show that any injury occurred within the required time as prescribed by statute.

Assuming, as the plaintiff contends, this is a continuing nuisance which can be abated and which gives rise to repeated causes of action, the question is now moot in view of the evidence. In *Adams v. City of Arkansas City*, 188 Kan. 391, 362 P. 2d 829, it was said:

"In actions of this nature the appellants are bound by the statutory claim which they are required to file with the city clerk pursuant to 12-105, *supra*, as a condition precedent to the maintenance of any action against a municipality, and their rights of recovery are based upon such claim. . . ." (l. c. 397.)

Inasmuch as the plaintiff failed to establish any right of recovery, the district court properly sustained the demurrer to the evidence.

The judgment is affirmed.